### KEEGAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE ENGINE—EVIDENCE.
   Plaintiff, a brakeman, was about to couple an engine and freight car, when steam came from the engine, burning him so that he did not let the coupling pin drop, and his hand was crushed between the bumpers. *Held*, that plaintiff was not entitled to recover on the ground that the escape of steam was caused by a defective steam chest or cylinder, where the engine ran for six months thereafter, till taken in for general repairs.

2. SAME—FELLOW SERVANTS.
   Where the cover of a steam chest was loose because the nuts were not tightly screwed on the bolts, and steam thereby escaped, causing an accident to plaintiff, a brakeman engaged in coupling the engine with a car, and the engineer had all the tools necessary to tighten the bolts, plaintiff could not recover, because the accident was the fault of the engineer, a co-employé.

Appeal from trial term, Jefferson county.

Action by one Keegan against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Purcell, Walker & Burns, for appellant.
Breen & Breen, for respondent.

PER CURIAM. Upon September 15, 1896, the plaintiff entered the employ of the defendant as a brakeman, as a member of the shifting crew in the Watertown yard. His work was coupling, uncoupling, and shifting cars, and making up freight trains. His working hours were from 6 in the evening to 6 in the morning, and he worked until he was injured, upon the 8th day of January, 1897. Upon that night, about 8:30, he was upon the footboard on the front of a switch engine, in connection with which he was working, and was injured while attempting to couple the front of this engine to a car. He

had in his hand a coupling link, which was rather a long link, and heavier than the ordinary coupling link that would be used between two freight cars. Just as he was about to couple the cars a large amount of steam came out from the front of the engine, enveloping him, burning him, and scaring him so that he did not let the coupling pin drop, and his hand was crushed between the bumpers. It seems that when the plaintiff went into the employ of the defendant he signed a receipt for the rules, and also one for a coupling stick. He swears, however—First, that no coupling stick was given to him; second, that he was required to sign the receipt, without having time to read it; and, third, that the universal practice in the yard was to couple without the coupling stick. All of these claims were submitted to the jury, and they have presumptively found with him, which I think disposes of that defense.

. The negligence claimed by the plaintiff is in the condition of the steam chest or cylinder, one of which, it is claimed, was out of repair to such an extent as to permit the steam to escape in large quantities. The engineer was furnished with packing sufficient so that, with proper diligence on his part, the steam could not have escaped, except through some defective condition of the steam chest or cylinder. The claim that the piston rod had been so worn as to allow the steam to escape is wholly without support in the evidence, and is, at most, speculative. If the cover of the steam chest had been loose by reason of loose nuts upon the bolts, the engineer had all the tools necessary, and his fault in not tightening the nuts on those bolts was the fault of a co-employé. It appears, confessedly, that this engine was not taken in for repairs until it was taken in for general repairs the next spring. If the steam chest or cylinder was so far out of repair as thereby to cause the escape of steam to the extent claimed by the plaintiff, it would have been impossible to have run that engine without repair from September until the next spring. But this is what the jury has found, and their conclusion based upon these facts is so improbable as to lead irresistibly to the conclusion that their verdict was the result of prejudice or sympathy. The judgment should therefore be reversed, as against the weight of evidence, upon payment by the defendant of the costs of the trial and of this appeal.